UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

5:08-HC-2155-BR-JG

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL RIEDEL | RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW |

Comes now the respondent, Michael Riedel, by and through undersigned counsel, and respectfully requests that the Court enter the following findings of fact and conclusions of law in this matter, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

Petitioner, the United States of America ("the government") instituted this civil action on October 23, 2008, seeking to commit Michael Riedel ("Mr. Riedel" or "Respondent") as a sexually dangerous person pursuant to the Adam Walsh Child Protection and Safety Act of 2006 ("the Act"). 18 U.S.C. § 4248. [Docket Entry ("DE") 1.] The government filed a certificate stating that mental health personnel for the Federal Bureau of Prisons ("BOP") examined Respondent and issued a preliminary determination that he is sexually dangerous within the meaning of the Act. A certificate filed under the Act stays Respondent's release from federal custody pending a hearing to determine whether Respondent qualifies for commitment as a sexually dangerous person. The government's petition was filed forty-eight hours prior to Respondent's scheduled date of release from BOP custody on October 25, 2008. [*See id.*]

1

An evidentiary hearing and bench trial is scheduled in this case before Senior District Judge W. Earl Britt on February 13, 2012. After considering the testimony at the evidentiary hearing, the evidentiary record, and the parties' submissions, this Court concludes that the Government has failed to establish by clear and convincing evidence that Respondent is sexually dangerous to others as required by the Act and the Constitution.

## II. FACTS

1. Mr. Riedel was born in 1962 and was forty-nine (49) years of age at the time of his evidentiary hearing.

2. At the time of his hearing, Mr. Riedel had been incarcerated for more than three (3) years after his release date.

3. Mr. Riedel's release date from the BOP was October 25, 2008. [DE 1.]

### A. Personal History

4. Mr. Riedel was born in Anderson, Indiana into an intact family and has three siblings. (Resp.'t Ex. 1 at 4.) He reports no history of physical or sexual abuse as a child. (*Id.*)

5. Mr. Riedel graduated from Highland High School in 1981, and he attended Lincoln Technical School from 1981 to 1982 for training in diesel repair and general auto repair. (*Id.* at 17.)

6. Mr. Riedel was employed at Zeibart Auto Rustproofing from 1992 to 1997. (*Id.*) From 1997 to 1999, he had jobs with Cameron Glass as a laborer, Aaon, Inc. as a wiring technician, Harden's Wrecker, and Rider Wrecker as a tow-truck driver. (*Id.* at 28.)

7. Mr. Riedel has had four significant relationships with women his own age. Three of these relationships were for over two years in length, and he has three biological children. (*Id.* at 1-2.)

8. Mr. Riedel has used both marijuana and alcohol; however, he stopped smoking marijuana in 1999. (*Id.* at 11.) He completed the forty-hour substance abuse program as required by the Sex Offender Treatment Program at FCI–Butner. (*Id.*)

9. Mr. Riedel has maintained consistent employment throughout his incarceration and has received positive work evaluations. (*See* Resp.'t Ex. 3.)

### B. Criminal and Sexual Offense History

10. Mr. Riedel was referred for juvenile adjudication in 1978 at age 15 for charges including burglary, theft, rape, criminal recklessness, criminal confinement, robbery, battery, possession of paraphernalia, possession of controlled substance (marijuana), and violation of the 1935 Beverage Act. He served 112 days in the Juvenile Center and was on probation until age 18. (Petr. Ex. 5 at 1163.)

11. In 1983, Mr. Riedel pled guilty to criminal conversion (siphoning gas) and was sentenced to one year of informal probation. (*Id.* at 1163.) Also in 1983, he was charged with another burglary and was sentenced to five years of formal probation.

12. In 1989, he was arrested for two counts of child molestation and vicarious sexual gratification. While out on bond for these offenses, he was arrested for burglary. In 1992, he pled guilty to all four pending charges. For the sex offenses, he received five-year terms of imprisonment to run concurrently. He was sentenced to ten years imprisonment (suspended) to run consecutive to the terms of imprisonment he received for the sex offenses. Mr. Riedel

3

petitioned for a modification of his sentence in 1993 and was released from the Department of Corrections and placed on house arrest. (*Id.* at 1163-64.)

13. In 1994, he was arrested for indecent exposure; for the same conduct, a probation violation was also filed. In 1995, he was again arrested for indecent exposure and dissemination of matter harmful to minors; both of the 1995 charges were dismissed. In 1995, the Indiana court found that he had violated probation and sentenced him to two years imprisonment with credit for time served. (*Id.* at 1164.)

14. After his release from the Indiana Department of Corrections, he relocated to Oklahoma via an interstate transfer of probation in 1997. In 1999, he was found to be in possession of at least eighteen images of child pornography. He was federally indicted and also received a probation violation. He pled guilty in federal court and received a term of imprisonment of fifty-nine months to be followed by three years of supervised release. Additionally, the Oklahoma state court sentenced him to ten years of imprisonment to run concurrent with the federal term of incarceration. In 2004, he was released from federal custody to serve the unexpired state sentence in the Oklahoma Department of Corrections. He was released from state custody in 2007 to begin his three-year term of federal supervised release. (*Id.*)

15. Mr. Riedel's supervised release was revoked for accessing a computer at work without his probation officer's permission. He received a term of seven months of imprisonment to be followed by 29 months of supervised release. (*Id.*)

    C.    **Medical Health**

16. Mr. Riedel has no documented history of health problems. (*Id.* at 1158.)

4

Case 5:08-hc-02155-BR-JG   Document 67   Filed 02/10/12   Page 4 of 18

### D. Bureau of Prisons Disciplinary History

17. Mr. Riedel has not incurred any infractions in prison. (Resp.'t Ex. 1 at 33.)

18. Mr. Riedel was prohibited from receiving *Maxim* magazine during incarceration.

### E. Sex Offender Treatment

19. Mr. Riedel participated in limited treatment prior to his federal term of incarceration for his child pornography offense. (Petr. Ex. 5 at 1158.)

20. Mr. Riedel completed the two-year Sex Offender Treatment Program (SOTP) at FCI–Butner from 2002 to 2004. (*Id*. at 1160.)

21. When Mr. Riedel completed the program in 2004, his overall level of risk was estimated to be in the moderate range. (*Id*. at 1161.) Treatment staff provided the following in Mr. Riedel's Discharge Summary:

> Upon entering the SOTP, Mr. Riedel was resistant to the therapeutic process. He minimized his role as a sexual predator, externalized blame for much of his behaviors, and dismissed feedback from others. He engaged in intimidating and aggressive behaviors, was often interpersonally aversive, and engaged in a variety of "image management" techniques. Mr. Riedel was psychologically invested in being viewed as emotionally and physically in control with little need for emotional connection to others. He evidenced ingrained criminal thinking patterns, with his first instinct being to lie or manipulate as opposed to problem solve. Mr. Riedel demonstrated little or no empathy for his victims, limited insight into his grooming patterns, and poor social skills. **Over the course of treatment, Mr. Riedel has made progress in all of these areas.** While he was resistant to label himself as a sex offender, he eventually found comfort and safety in discussing his sexual deviance with other sex offenders. Repeated confrontation by treatment staff and other inmates lead Mr. Riedel to question himself and his lifelong history of dysfunctional behaviors. He allowed himself to become vulnerable and admit to deep feelings of worthlessness, inadequacies, and fear of repeated failures. **He learned coping and program solving skills which, after repeated use, gave him a sense of confidence in improving his life and managing his sexual deviance. In the last several months of treatment, Mr. Riedel has demonstrated a better understanding of his sexual deviant patterns of behaviors, his interpersonal**

**patterns of relating to others, and the importance of communicating openly and honestly.**

(*Id*. at 1160 (emphasis added).)

22. In May of 2010, Mr. Riedel voluntarily enrolled in the Community Treatment Program (CTP) at FCI–Butner during his current term of incarceration. After parting for several months, he withdrew in September of 2010. (Resp.'t Ex. 1 at 46.)

### F.     Current Status

23. On October 23, 2008, the United States filed the instant action seeking to commit Mr. Riedel as a sexually dangerous person under the Adam Walsh Act, 18 U.S.C. § 4248. [DE 1.] Pursuant to the statute, the filing of this action stayed his release pending the outcome of the proceedings. Mr. Riedel completed his criminal sentence on October 25, 2008 and was scheduled to be released that day if the government had not filed the certification pursuant to § 4248. On November 7, 2007, this Court granted Respondent Graydon Comstock's motion to dismiss on the grounds that the Act violated the Commerce Clause. The United States Supreme Court reversed, and on December 6, 2010, the Fourth Circuit issued its opinion reversing and remanding Mr. Comstock's case back to this Court. During the appellate courts' review of the constitutionality of the Act, Respondent's § 4248 proceeding was stayed *ab initio*.

24. If released, Mr. Riedel will be on supervised release for a term of twenty-nine months. Judgment, *United States v. Riedel*, 1:07-cr-151-DFH-KPF (S.D. Ind. Apr. 9, 2008). The amended conditions of his supervised release include, among others, no possession or use of a computer unless he complies with the Computer Restriction and Monitoring Program, no possession of any pornography, erotica, or nude images, participation in treatment for sexual

6

disorders, no unsupervised contact with minors, registration as a sex offender, submission to random searches of his person, vehicle and residence, and reporting to a probation officer as required. *Id.* at 4.

## III. EXPERT'S QUALIFICATIONS

25. The government retained Dr. Harry Hoberman as an expert in the case. Dr. Hoberman reviewed Mr. Riedel's records and interviewed Mr. Riedel.

26. The government will also call Dr. Dawn Graney as an expert in the case. Dr. Graney reviewed Mr. Riedel's records but did not conduct a current interview of Mr. Riedel.

27. Respondent selected Dr. Richard Wollert as a court examiner. Dr. Wollert reviewed Mr. Riedel's records and interviewed Mr. Riedel.

28. The parties did not challenge the qualifications of any of the above experts. The Court having reviewed the curriculum vitae of the experts, finds that each individual is qualified by education and experience to offer expert testimony in this matter.

## IV. LEGAL PRINCIPLES

### A. <u>Standard of Proof and Elements Required to be Established</u>

29. The government has the burden of proving each element by clear and convincing evidence. 18 U.S.C. § 4248(d). "[T]he individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity" that this standard is required not only by the Act, but by the Due Process clause of the Constitution." *Addington v. Texas*, 441 U.S. 418, 427 (1979). The clear and convincing evidence standard is an "intermediate standard," lying somewhere "between preponderance of the evidence and proof beyond a reasonable doubt." *Id.* at 425. "'Clear and convincing' has been defined as evidence of such weight that it produces in the

7

mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established." *Jimenez v. DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001) (internal quotations and citations omitted). It has alternatively been described "as meaning 'highly probable.'" *Direx Israel Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 810 n.7 (4th Cir. 1992) (quoting 9 J. Wigmore, Evidence § 2498 (3d ed. 1940)).

30. To commit Respondent, the government must prove by clear and convincing evidence that Respondent is a "sexually dangerous person," which the Act defines as "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). An individual is "sexually dangerous to others" under the Act if he "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6).

31. This phrase has not been defined by the statute. The legislative history indicates that it is a direct legislative enactment of the principle of volitional impairment enunciated in *Kansas v. Hendricks*, 521 U.S. 346 (1997) and *Kansas v. Crane*, 534 U.S. 407 (2002). *See* H.R. Rep. No. 109-218(I) Section-by-Section Analysis and Discussion § 511. In *Crane*, the Supreme Court stated that the "serious difficulty" requirement is intended to distinguish the "dangerous sexual offender whose mental illness, mental abnormality or mental disorder subjects him to civil commitment, from the dangerous, but typical, recidivist convicted in an ordinary criminal case who, having been convicted and punished for one crime, proceeds through his own free choice to commit another." *Crane*, 534 U.S. at 413.

8

32. A finding of dangerousness is also constitutionally required. *Kansas v. Crane*, 534 U.S. at 407-09, 410 (stating "we have consistently upheld involuntary commitment statutes . . . [when] (1) the confinement takes place pursuant to proper procedures and evidentiary standards; (2) there is a finding of 'dangerousness either to one's self or others,' and (3) proof of dangerousness is "coupled . . . with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality'" (*citing Kansas v. Hendricks*, 521 U.S. 346, 357-58; quotations omitted)). *See also Foucha v. Louisana*, 504 U.S. 71, 82-83 (1992).

33. The Court finds that in this regard, the statute and due process considerations require that, in addition to a volitional impairment, the government must prove by clear and convincing evidence that Respondent poses a risk of reoffense that is significant enough to justify a finding that Respondent is sexually dangerous and therefore can be preventively detained.

34. In this case the government has proven neither. The evidence in this case does not demonstrate that Respondent currently suffers from a volitional impairment. The evidence also demonstrates that the recidivism rates proposed by the government's experts are likely overestimates. Further, even if this Court were to credit the government's experts regarding Respondent's likelihood of recidivism, the statistical evidence presented does not rise to the level of clear and convincing evidence of dangerousness sufficient to justify commitment.

V. FINDINGS

A. **Prior Bad Acts**

35. Mr. Riedel does not contest that he has engaged in child molestation in the past. This Court finds that the government has established this element by clear and convincing evidence.

9

### B. Suffers from a Serious Mental Illness, Abnormality or Disorder

36. Dr. Graney diagnosed Mr. Riedel with Pedophilia, Exhibitionism, and Antisocial Personality Disorder. (Petr. Ex. 5 at 1171.) Dr. Hoberman diagnosed Mr. Riedel with Pedophilia, Hebephilia, Paraphilia Not Otherwise Specified (Paraphilia NOS), Hypersexuality, Cannabis Dependence, Voyeurism, Narcissistic Personality Disorder, and Antisocial Personality Disorder. (Petr. Ex. 3 at 1291, 1392, 1394-97.) Dr. Wollert concluded that Mr. Riedel does not suffer from a serious mental disorder, explaining that Mr. Riedel has committed different types of sexual misconduct at different periods of his life. (Resp.'t Ex. 1 at 62.) The Court finds that the government has not established by clear and convincing evidence that Mr. Riedel presently suffers from a serious disorder. In reaching this conclusion, the Court credits Dr. Wollert's opinion. If Mr. Riedel did presently suffer from serious mental disorder, the Court would expect to see a more pronounced pattern emerge from his offending. The Court cannot find any offending pattern amid his varied criminal history. The Court agrees with Dr. Wollert that "[i]f anything, his offenses reflect the errors of commission and omission that are associated with criminal thinking." (*Id.*)

### C. Serious Difficulty Refraining from Child Molestation

37. In order to commit Mr. Riedel, the government must prove that the disorder results in "serious difficulty refraining from sexually violent conduct or child molestation if released." 18 U.S.C. § 4247(a)(6). As discussed previously, this term implies a volitional impairment.

38. The DSM-IV-TR is clear that the fact that someone has been diagnosed with a mental illness or disorder does not answer the question of whether that person's volition is impaired. The manual states:

> It is precisely because impairments, abilities and disabilities vary widely within each diagnostic category that assignment of a particular diagnosis does not imply a specific level of impairment or disability. The fact that an individual's presentation meets the criteria for DSM diagnoses does not carry any necessary implications regarding the individual's degree of control over the behaviors that may be associated with the disorder. Even when diminished control over one's behavior is a feature of the disorder, having the diagnosis in itself does not demonstrate that a particular individual is or was unable to control his or her behavior at a particular time.

DSM-IV-TR at page xxxiii.

39. This Court finds that the government has not shown by clear and convincing evidence that Respondent currently presents a serious mental illness, abnormality or disorder that impairs his volitional control such that he would have serious difficulty refraining from sexually violent conduct or child molestation if released. Accordingly, even if the Court would have found that the government had proven the second element of the statute, the Court would still have found that the government could not ultimately carry their burden.

## VI. DANGEROUSNESS/RISK ASSESSMENT

### A. Introduction

40. Drs. Graney, Hoberman, and Wollert conducted a risk analysis based on empirical tools and actuarial instruments to evaluate, quantify, and support their dangerousness determination.

41. No psychological tests or actuarial instruments have been developed that predict with certainty an individual's risk of future sexual offending. The risk instruments are based on group data and provide risk estimates of defined sample groups to which an individual is compared. "The recidivism rates contained in the actuarial tables are the product of the amalgamated risk characteristics of the group and, therefore cannot be ascribed to a particular individual since the

11

risk factors for the individual may vary substantially from that of the group." Theodore Donaldson & Brian Abbott, *Prediction in the Individual Case: An Explanation and Application of its Use with the Static-99R in Sexually Violent Predator Risk Assessments,* 29(1) American Journal of Forensic Psychology 7 (2011). The actuarial instruments provide only group prediction rates on risk of re-offending. The instruments do not provide individual rates of reoffending. *Id.*

42. In evaluating Mr. Riedel, all of the experts utilized a clinical analysis combined with actuarial instruments and psychological tests to determine if Mr. Riedel presents a serious risk of reoffending.

43. Three expert opinions were offered by the parties on the issue of whether Mr. Riedel meets the criteria for commitment pursuant to 18 U.S.C. § 4248. Drs. Graney and Hoberman, the government's experts, both opined that Mr. Riedel is a sexually dangerous person as defined by the Act. Dr. Wollert opined that Mr. Riedel is not a sexually dangerous person and is not at risk of reoffending if released.

44. For the reasons set forth below, the Court finds that the government has not established by clear and convincing evidence that Respondent suffers from a serious mental illness, abnormality or disorder that impairs his volitional control and would result in him having serious difficulty refraining from sexually violent conduct or child molestation.

B. <u>Expert Opinions</u>

1. **Dr. Harry Hoberman**

45. Dr. Harry Hoberman authored two evaluation reports dated July 15, 2011 and December 15, 2011; he authored the second report after conducting an interview with Mr. Riedel.

(Petr. Ex. 2, 3.) He opined, based on his examination of Mr. Riedel and review of his records, that Mr. Riedel meets the criteria as a sexually dangerous person as described in 18 U.S.C. § 4248. (*Id.*) His opinion appears to be based on both a clinical analysis of Mr. Riedel and an assessment of actuarial instruments. (*Id.*)

46. Dr. Hoberman diagnosed Mr. Riedel with Pedophilia, Hebephilia, Paraphilia Not Otherwise Specified (Paraphilia NOS), Hypersexuality, Cannabis Dependence, Voyeurism, Narcissistic Personality Disorder, and Antisocial Personality Disorder. (Petr. Ex. 3 at 1291, 1392, 1394-97.)

47. Dr. Hoberman used several instruments during the course of his evaluation, including the Screening Scale for Pedophilic Interests, the Hare Psychopathy Checklist (PCL-R), the Static-99, the Minnesota Sex Offender Screening Tool, the Sex Offender Risk Appraisal Guide (SORAG), the Sexual Violence Risk-20 (SVR-20), and the Structured Risk Assessment: Forensic Version (SRA-FV). (*See, e.g.*, Petr. Ex. 2 at 1248, 1255, 1269-75.) He concluded that Mr. Riedel's score on the Static-99 placed him in the high risk category, comparing him to a group of offenders who recidivated at a rate of 52%. (Petr. Ex. 3 at 1412.) However, it is unclear to which Static-99 sample Dr. Hoberman compared Mr. Riedel. Dr. Hoberman rated Mr. Riedel on the PCL-R, giving him a prorated total score of 31 and concluding that Mr. Riedel should be defined as a psychopath. (*Id.* at 1398.) Dr. Hoberman also gave Mr. Riedel a score on the MnSOST-R that is associated statistically with a high likelihood of reoffense; the recidivism rate associated with this score is 72% over six years. (*Id.* at 1413.) However, it is unclear what precise score Mr. Riedel received on the MnSOST-R. Dr. Hoberman concluded that Mr. Riedel's score on the SORAG, which predicts rearrest for a new violent offense, is statistically associated with a

13

58% probability of violent reoffending within seven years and a 75% probability of reoffending within ten years. (*Id.* at 1398.) However, it is unclear what precise score Mr. Riedel received on the SORAG. Dr. Hoberman further found that the other instruments provided support for the conclusion that Mr. Riedel was sexually dangerous.

### 2. Dr. Dawn Graney

48. Dr. Graney, a psychologist employed by the BOP, opined based on her review of the records that Mr. Riedel suffers from a serious mental illness, abnormality, or disorder, and as a result would have serious difficulty in refraining from sexually violent conduct or child molestation. (Petr. Ex. 5.) Dr. Graney diagnosed Mr. Riedel with Pedophilia, Exhibitionism, and Antisocial Personality Disorder. (*Id.* at 1171.)

49. In assessing Mr. Riedel's risk of recidivism, Dr. Graney used the Static-99R. Dr. Graney gave Mr. Riedel a score of 9 on this actuarial instrument; she compared Mr. Riedel to the high risk/high needs sample and placed Mr. Riedel in a group that reoffended at a rate of 52.4% in five years and 61.9% in ten years. (*Id.* at 1175.)

50. Additionally, she used "empirically supported dynamic risk factors" to determine that other factors exacerbated his risk. (*Id.* at 1176.) Dr. Graney concluded that Mr. Riedel had intimacy deficits, long-standing difficulties with sexual self-regulation, failure to comply with supervision, and poor general self-regulation. (*Id.* at 1177-78.)

### 3. Dr. Richard Wollert

51. Dr. Wollert opined based on his examination of Mr. Riedel and review of his records that although Mr. Riedel had committed acts of child molestation in the past, he did not meet criteria for commitment.

14

52. Dr. Wollert concluded that Mr. Riedel does not suffer from a serious mental disorder. In reaching this conclusion, Dr. Wollert explained that Mr. Riedel "has had sexual problems that have led to legal adjudications on a number of occasions. Regarding the issue of specificity, however, his misbehavior has not shown any particular focus. On the contrary, he has committed different types of sexual misconduct at different periods of his life." (Resp.'t Ex. 1 at 62.) Accordingly, Dr. Wollert concluded that "[i]f anything, his offenses reflect the errors of commission and omission that are associated with criminal thinking." (*Id.*)

53. In assessing Mr. Riedel's risk of recidivism, Dr. Wollert used the MATS-1 and scored Mr. Riedel as a 4+. The eight-year recidivism rate for those with scores in the medium range on the MATS-1 who are forty-nine years old is slightly over 26%. (*Id.* at 64.)

54. Dr. Wollert did not use any dynamic risk factors to incrementally adjust the static risk calculated by the MATS-1. He explained that he does not engage in this practice because "[a]ge is the only risk factor that has been shown to have this type of 'incremental' effect, however, and it has been fully accounted for in the MATS-1. Those who argue for the incremental efficacy of other factors need to present data that demonstrate the size of the effect they claim to be tapping." (*Id.*)

## VII. CONCLUSIONS OF LAW

55. The Court finds that Respondent has committed acts of child molestation in the past.

56. The Court finds that the government has not shown by clear and convincing evidence that Mr. Riedel presently suffers from a serious mental disorder. The government has not adduced sufficient evidence to show that Mr. Riedel's past offenses were driven by serious mental disorders. Rather, the Court finds persuasive Dr. Wollert's characterization of Mr.

15

Riedel's offenses: "Regarding the issue of specificity, however, his misbehavior has not shown any particular focus. On the contrary, he has committed different types of sexual misconduct at different periods of his life. . . . If anything, his offenses reflect the errors of commission and omission that are associated with criminal thinking." (Resp.'t Ex. 1 at 62.)

57. Notwithstanding the Court's conclusion that the government has failed to meet the second prong of the statute, the Court further finds that the government has not proven by clear and convincing evidence that Respondent suffers from a volitional impairment such that he would have "serious difficulty refraining from sexually violent conduct of child molestation if released."

58. The United States Supreme Court precedent makes clear that the "serious difficulty" language does not require total or complete lack of control, but does require that it must be difficult, if not impossible, for the person to control his dangerous behavior. *See Kansas v. Crane*, 534 U.S. 407, 411 (2002) (citing *Kansas v. Hendricks*, 521 U.S. 346, 358 (1997)). The conflicting evidence concerning the probability of Mr. Riedel's reoffending cannot support a finding that he would have "serious difficulty" in refraining from child molestation. The spectrum of Mr. Riedel's past offenses tend to show that Mr. Riedel more similar to a typical criminal offender than a sexually dangerous person. The Court also emphasizes the time in the community that Mr. Riedel has spent without engaging in sexually violent acts or child molestation and his completion of a two-year comprehensive sex-offender treatment program.

59. The Court has been presented with three opinions about Respondent's risk of reoffense in the event he is released. The Court has considered the information and finds this information relevant to its determination of Respondent's sexual dangerousness. Having

considered the reports, forensic evaluations, and testimony of the four experts in this case, the Court finds that the government has not proven dangerousness by clear and convincing evidence sufficient to justify commitment.

## CONCLUSION

For the foregoing reasons, the Court should enter judgment in this matter that Michael Riedel is not a "sexually dangerous person" and order his release from the custody of the federal Bureau of Prisons so that he may complete his term of supervised release.

Respectfully submitted this 10th day of February, 2012.

        THOMAS P. MCNAMARA
        Federal Public Defender

        /s/ Debra Carroll Graves
        DEBRA CARROLL GRAVES
        Assistant Federal Public Defender
        E-mail: Debra_Graves@fd.org
        N.C. State Bar No. 13513

        /s/ Katherine E. Shea
        KATHERINE E. SHEA
        Assistant Federal Public Defender
        E-Mail: Kat_Shea@fd.org
        Member of the New York State Bar

        ATTORNEYS FOR RESPONDENT
        Office of the Federal Public Defender
        150 Fayetteville Street, Suite 450
        Raleigh, North Carolina 27601
        Telephone: 919-856-4236
        Fax: 919-856-4477
        LR 57.1 Counsel, Appointed

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing *RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW* was served upon:

| | |
|---|---|
| **Joshua B. Royster** | **Michael Bredenberg** |
| **G. Norman Acker, III** | Bureau of Prisons, Legal Dept. |
| **R.A. Renfer, Jr.** | P.O. Box 1600, Old Highway 75 |
| **Seth Wood** | Butner, NC 27509 |
| U. S. Attorney's Office | Email: mbredenberg@bop.gov |
| Rm. 800, 310 New Bern Ave. | |
| Raleigh, NC 27601 | |
| Email: joshua.royster@usdoj.gov | |
| Email: norman.acker@usdoj.gov | |
| Email: rudy.renfer@usdoj.gov | |
| Email: seth.wood@usdoj.gov | |

by electronically filing the foregoing with the Clerk of Court on February 10, 2012 using the CM/ECF system which will send notification of such filing to the above:

This the 10th day of February 2012.

/s/ Debra Carroll Graves
DEBRA CARROLL GRAVES
Assistant Federal Public Defender
E-mail: Debra_Graves@fd.org
N.C. State Bar No. 13513
Attorney for Respondent
Office of the Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, North Carolina 27601
Telephone: 919-856-4236
Fax: 919-856-4477
LR 57.1 Counsel, Appointed